# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3971

_____

Pediatric Speciality Care, Inc.; Child &   *
Youth Pediatric Day Clinics, Inc.;   *
Family Counseling & Diagnostic   *
Clinic, Inc.; Tomorrow's Child   *
Learning Center, LLC; D&D Family   *
Enterprises, Inc.; James Swindle;   *
Stacey Swindle; as parents and next   *
best friends of Jacob and Noah Swindle, *
Minors; Susann Crespino, as parent and *
next best friend of Michael Crespino,   *
a minor,   *
  *
    Appellees,   *
  *   Appeal from the United States
  v.   *   District Court for the
  *   Eastern District of Arkansas.
  *
Arkansas Department of Human   *
Services; Kurt Knickrehm, in his   *
individual capacity and in his official   *
capacity as Director of the The   *
Arkansas Department of Human   *
Services; Ray Hanley, in his individual *
capacity and in his official capacity as   *
Director of the Division of Medical   *
Services of The Arkansas Department   *
of Human Services,   *
  *
    Appellants.   *

_____

Submitted:  March 14, 2002

Filed: June 10, 2002
_____

Before McMILLIAN, HEANEY and RILEY, Circuit Judges.
_____

HEANEY, Circuit Judge.

The Arkansas Department of Human Services ("ADHS") appeals the district court's decision to permanently enjoin it from repealing certain Arkansas State Medicaid Plan ("State Plan") provisions relating to services provided under the Child Health Management Services program ("CHMS").  We affirm in part, reverse in part and remand for proceedings consistent with this opinion.

I.  Background

CHMS is the health care model that Arkansas currently uses to provide early intervention diagnostic and therapy services to Medicaid-eligible children between the ages of six months and six years in order to help make them ready for school.  It is designed to serve children who "have or are at increased risk for chronic physical, developmental, behavioral, or emotional conditions and who require health and related services of a type or amount beyond that required by children generally."[1]

_____

[1]Children are eligible for the program if they have a medical diagnosis such as AIDS, cystic fibrosis, child maltreatment syndrome (victim of abuse and neglect), Down syndrome, lead poisoning, congenital heart disease, cerebral degeneration, or macroephaly.   See Arkansas Medicaid Manual at II-20.  Children may also be eligible if they have a developmental diagnosis such as autism, blindness or visual impairment, cerebral palsy, cognitive disorders, deafness or hearing impairment,

Arkansas Medicaid Manual at II-19. The services are provided under the State Plan as part of the early and periodic screening, diagnosis, and treatment ["EPSDT"] mandate in Title XIX of the Social Security Act ["Medicaid Act"], codified at 42 U.S.C. §§ 1396a(a)(10), 1396a(a)(43), 1396d(a) and 1396d(r) (1994).

CHMS services may be divided into three categories: (1) diagnostic and evaluation services; (2) pediatric day treatment; and (3) therapies and other treatments. After a referral by a physician, CHMS clinic staff, including nurses, social workers, therapists, and psychologists, perform a diagnostic evaluation consisting of audiology, medical, behavioral, speech, language, and psychological assessments. Using the results of these evaluations, a CHMS physician prepares an individual treatment plan and prescribes services and treatments for the child. These therapies and treatments are provided at the CHMS clinics and include: nutrition services, behavior therapies, occupational and physical therapies, speech and language pathology services, psychological therapies, and early intervention day treatment. The model, in its current state, facilitates EPSDT by providing the evaluation and therapies in multi-disciplinary clinical settings that allow children to receive all their therapies in one location. Furthermore, the model provides an early intervention day treatment program to reinforce the skills children learn in individual therapies.[2] There are approximately thirty-nine CHMS clinics in the state, serving

developmental delay, motor skills disorder, learning disabilities or mental retardation. See id. at II-21. CHMS care is required for children who are diagnosed with three or more medical, developmental, behavioral or environmental conditions/traumas. Id. at II-22.

[2] The early intervention day treatment program is a type of day care program run by early childhood specialists and overseen by medical staff. The curriculum is structured to ameliorate conditions discovered by the EPSDT evaluations and to strengthen the skills children learn in therapy. The teachers work closely in conjunction with the therapists, and medical personnel are on hand for emergency situations. Early intervention day treatment serves children who are not able to

thirty of Arkansas's seventy-five counties. On any given day, approximately 1500 Arkansas children are eligible to receive CHMS services.

Due to a budget shortfall, Arkansas decided to reduce its Medicaid expenditures by $12 million. In November 2001, ADHS issued a press release that outlined suggested changes to the State Plan and announced its intention to cut some of the services available under the CHMS program. With regard to EPSDT services, the press release stated:

> The department will amend the Medicaid State Plan to redefine the [CHMS]. This will change how treatment services are delivered to children who don't have a serious medical problem, but are considered at risk. The department will continue to pay for diagnostic services, but will no longer pay for CHMS daycare and therapy services. Programs such as Head Start and Arkansas Better Chance are already providing day care services, and will continue to provide this service, in a more cost efficient manner than is available at CHMS. Therapies that have been provided by CHMS are available from private providers . . . . It is estimated this action will save the Medicaid program between $4.9 million and $5.7 million annually. Arkansas is the only state that has been covering CHMS through the Medicaid program.

Appellant's App. at 371.[3] As we understand the state's proposal, it would leave the diagnostic and evaluation leg of CHMS intact, meaning that a physician would still refer a child to a CHMS clinic for an evaluation, the staff at the CHMS clinic would perform the evaluation, and a CHMS physician would recommend the needed therapies. However, the therapies and the early intervention day treatment services

_____

function or learn in a normal day care setting such as Head Start.

[3]Ray Hanley, the director of the Division of Medical Services at ADHS, testified that the Department planned to cut day treatment services. Trial Tr. Vol. 2 at 198.

would no longer be part of the CHMS program; thus, they would no longer be listed specifically in the State Plan.[4]

Shortly after the state announced these cutbacks, Pediatric Specialty Care, Inc., a provider of CHMS services, along with other CHMS providers ("provider plaintiffs") and the parents of three recipients of CHMS services ("recipient plaintiffs") filed suit under 42 U.S.C. § 1983 seeking temporary and permanent injunctive relief on the basis that the ADHS's proposed cutbacks would violate their federal right to EPSDT services.

After a full hearing, the district court agreed with the plaintiffs and found that the Medicaid Act gives them an enforceable right to early intervention day treatment services. In its findings of fact, the court noted that the only early intervention day treatment services provided to children under the current State Plan are those provided to children enrolled in CHMS. The court also found that even though therapy services would be provided by other sources if the budget cuts took place, therapy services "not provided in conjunction with CHMS day treatment services will not result in the maximum reduction of their developmental disabilities or restoration of their best possible functional level, as mandated by [§] 1396d(a)(13)." Pediatric Specialty Care, Inc., etc. v. Arkansas Dep't of Human Servs., No: 4:01CV00830WRW, slip op. at 10 (E.D. Ark Dec. 18, 2001). In its conclusions of law, the district court held that CHMS day treatment is a rehabilitative service, with both medical and remedial components under § 1396d(a)(13). The court further stated that the day treatment provided through CHMS is "treatment for the maximum reduction of disability and for a restoration of [a developmentally delayed child] to the best possible functional level." Id. at 14

---

[4]The press release indicates that CHMS clinics would no longer be reimbursed for providing therapies or early intervention day treatment. ADHS clarified at oral argument, however, that CHMS therapists could enroll as Medicaid therapists under the new state plan. Therefore, the decision not to reimburse CHMS early intervention day treatment services has the biggest practical impact of the proposed changes.

(quoting 42 U.S.C. § 1396d(a)(13)). The court ultimately held that categorically needy children who request medical assistance under § 1396d(a)(13), and for whom a physician recommends early intervention day treatment, have a federal right to the treatment. The court then granted a permanent injunction enjoining the CHMS cutbacks, reasoning that because early intervention day treatment is not provided for elsewhere in the State Plan, the ADHS may not cut its funding of CHMS day treatment. ADHS appeals.

## II. Discussion

We consider three issues on appeal: (1) whether the district court erred in determining that the appellees may bring a § 1983 cause of action; (2) whether the district court's factual findings regarding day treatment services are clearly erroneous; and (3) whether the district court erred in determining that the Medicaid Act creates an enforceable right to CHMS day treatment services.

First, ADHS argues that the Medicaid Act does not create a federal right that appellees may enforce through a § 1983 action. Section 1983 provides a federal cause of action against anyone who, acting pursuant to state authority, violates any "rights privileges or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. A remedy is available under § 1983 for violations of federal statutory and constitutional law. Maine v. Thiboutot, 448 U.S. 1, 4 (1980). In order to bring a § 1983 claim, however, a plaintiff must assert a violation of a federal right, not just a violation of a federal law. Blessing v. Freestone, 520 U.S. 329, 340 (1997) (citation omitted). To determine whether the statute in question gives rise to a federal right, we consider three factors: (1) whether the provision in question was "intend[ed] to benefit" the putative plaintiff; (2) whether the interest the plaintiff asserts is not so "vague and amorphous" that it is beyond the competence of the judiciary to enforce; and (3) whether the provision in question creates a binding obligation on the governmental unit. Id. (citations omitted).

The district court found that the plaintiffs met these requisites and properly asserted a federal right enforceable in a § 1983 action. ADHS now challenges the court's holding that the provider plaintiffs are intended beneficiaries of the EPSDT provisions. ADHS concedes, however, that the recipient beneficiaries are intended beneficiaries of the statute. Given this admission, even if we were to find that the provider plaintiffs are not the intended beneficiaries, the recipient plaintiffs may still enforce the federal statute. Furthermore, ADHS does not argue with the proposition that even without individual standing, the provider plaintiffs in this case have standing to assert the rights of their CHMS patients. See Singleton v. Wulff, 428 U.S. 106, 115-117 (1976) (noting that "where the relationship between the litigant and the third party [is] such that the former is fully, or very nearly, as effective a proponent of the right as the latter," there may be an exception to the third party standing rules). Therefore, we find no error in the district court's holding that the plaintiffs satisfied the "intended beneficiary" prong of the § 1983 test.

Next we turn to the issue of whether the Medicaid Act creates a binding obligation on the states with regard to EPSDT services and whether that obligation is so vague and amorphous that its enforcement is beyond judicial competence. Medicaid is a cooperative federal-state program designed to provide medical assistance and rehabilitation services to low-income individuals. See 42 U.S.C. § 1396. The federal government grants funds to the states for the provision of health care services, and the states act as administrators of those funds. Id.; Smith v. Rasmussen, 249 F.3d 755, 757 (8th Cir. 2001). States are not required to participate in the Medicaid program, but if they do they must comply with the requirements of the Medicaid Act and its regulations. Id. (citation omitted). "To qualify for federal funds, a state must submit a plan to the Secretary of Health and Human Services (HHS) which complies with [the] fifty-eight subsections outlined in 42 U.S.C. § 1396a(a)." Arkansas Med. Soc'y, Inc. v. Reynolds, 6 F.3d 519, 522 (8th Cir. 1993).

To determine whether the Medicaid Act imposes a binding obligation on the State of Arkansas, we must determine whether the statutory language is "couched in mandatory, rather than precatory, terms." Blessing, 520 U.S. at 340. The language in § 1396a is mandatory language. Section 1396a(a)(10)(A) states that the provision of EPSDT services "must" be included in the state plan.[5] Section 1396a(a)(43) also articulates that a state plan "must" include the provision of EPSDT services.[6] These EPSDT services are defined as: screening services, which must include a comprehensive health and development history, a comprehensive unclothed physical exam, appropriate immunizations, laboratory tests, and health education; vision services; dental services; hearing services; and "such other necessary health care, diagnostic services, treatment, and other measures . . . to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan." 42 U.S.C. §1396d(r). We find that this statutory language creates a binding obligation upon ADHS to create a state plan that includes the provision of EPSDT services as they are defined in § 1396d(r). Furthermore, we find that this obligation is not so ambiguous or amorphous that its enforcement strains judicial competence. Therefore, we hold that the plaintiffs have an federal right to EPSDT services that is enforceable in a § 1983 action.

---

[5]Section 1396a(a)(10)(A) mandates that a state plan provide medical assistance, "including at least the care and services listed in paragraphs (1) through (5), (17) and (21) of section 1396d(a)." 42 U.S.C. § 1396a(a)(10)(A). Section 1396d(a) defines the term "medical assistance," and subpart 4(B) of that subsection includes "early and periodic screening, diagnostic, and treatment services (as defined in subsection (r) of this section)." 42 U.S.C. § 1396d(a)(4)(B). Because § 1396a(a)(10)(a) states that a state plan must provide at least the medical assistance provided in § 1396d(a) (1)-(5), (17), (21), EPSDT services must be included in a state plan.

[6]Section 1396a(a)(43) mandates that a state plan provide for screening services, arrange corrective treatment for disorders uncovered by the screening services, and inform all eligible recipients of the availability of EPSDT services.

Next we turn to the issue of whether the district court's factual findings regarding ADHS's CHMS program are clearly erroneous. See Love v. Reed, 216 F.3d 682, 687 (8th Cir. 2000) (noting that we review a district court's findings of fact for clear error). A finding of fact is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). In the present case, the district court found that:

> [T]he day treatment services currently being provided to children enrolled in the CHMS program, in conjunction with their therapy services result in the maximum reduction of their physical and mental disabilities, and restoration of their best possible functional level . . . . According to the testimony of Mr. Tom Dalton, Dr. Michael Prince, and Dr. Pat Casey, which I credit, even though the therapy services may still be available to CHMS children from other sources if the decision . . . is implemented, therapy services not provided in conjunction with CHMS day treatment services will not result in the maximum reduction of their developmental disabilities or restoration of their best possible functional level, as is mandated by § 1396d(a)(13).

Pediatric Specialty Care, Inc., etc., No: 4:01CV00830WRW, slip op. at 10. Furthermore, the district court found that "early intervention day treatment is a rehabilitative service, with both medical and remedial components." Id.

The evidence presented at trial demonstrated that early intervention day treatment services provide numerous benefits to children, including increased IQ levels, reduction in developmental disabilities, and a decreased chance of being placed in special education classes. There was evidence that the American Academy of Pediatrics urges pediatricians to consider early intervention as a beneficial service and

to make appropriate diagnostic evaluations and referrals.[7] Upon review of the entire record, we find that the district court's factual findings regarding CHMS services are not clearly erroneous.

Next, we must decide whether the Medicaid Act requires Arkansas to provide early intervention day treatment services. We believe that this question encompasses two distinct issues. First, whether the Medicaid Act requires Arkansas to specifically provide for CHMS early intervention day treatment services in the State Plan, and second, whether the State Plan must reimburse early intervention day treatment services when a physician determines that they are medically necessary for the maximum reduction of a disability. The district court resolved these issues by holding that:

> [A] categorically needy individual under 21 who requests medical assistance under 1396d(a)(6) and 1396d(a)(13), and [for whom] early intervention day treatment is recommended by a physician . . . has a federal right to early intervention day treatment. Because early intervention day treatment is not provided for elsewhere in the State Plan, [A]DHS may not cut funding or provision of early intervention day treatment in the CHMS plan.

Pediatric Specialty Care, Inc., etc., No: 4:01CV00830WRW, slip op. at 14.

We reverse the district court's holding to the extent that it requires that CHMS early intervention day treatment services be specifically included in the State Plan. As stated, the State Plan must include the provision of EPSDT services as those services

---

[7]We also note that the Medicaid Act itself contemplates that medical assistance for children with disabilities may have an educational component. See 42 U.S.C. § 1396b(c) (noting that Medicaid may cover services that are also part of a child's individual education program or individualized family service plan adopted pursuant to the Individuals with Disabilities Education Act).

are defined in §1396d(r).  <u>See</u> §§ 1396a(a)(10)(A), 1396d(a)(4)(B); <u>see</u> <u>also</u> 1396a(a)(43).  Section 1396d(r) lists in detail the screening services, vision services, dental services, and hearing services that the State Plan must expressly include, but with regard to treatment services, it states that EPSDT means "[s]uch other necessary health care, diagnostic services, treatment, and other measures described in subsection (a) of this section to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, <u>whether or not such services are covered under the State plan</u>." 42 U.S.C. § 1396d(r)(5) (emphasis added).  Reading § 1396a, § 1396d(a), and § 1396d(r) together, we believe that the State Plan need not specifically list every treatment service conceivably available under the EPSDT mandate.

The State Plan, however, must pay part or all of the cost of treatments to ameliorate conditions discovered by the screening process when those treatments meet the definitions set forth in § 1396a.  <u>See</u> § 1396d(r)(5); <u>see</u> <u>also</u> §§ 1396a(a)(10), 1396a(a)(43), and 1396d(a)(4)(B).  The Arkansas State Plan states that the "State will provide other health care described in [42 U.S.C. 1396d(a)] that is found to be medically necessary to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, even when such health care is not otherwise covered under the State Plan." <u>See</u> State Plan Under Title XIX of the Social Security Act Medical Assistance Program, State of Arkansas at § 4.b.  This provision meets the EPSDT mandate of the Medicaid Act.

We affirm the district court's decision to the extent that it holds that a Medicaid-eligible individual has a federal right to early intervention day treatment when a physician recommends such treatment.  Section 1396d(r)(5) states that EPSDT includes any treatments or measures outlined in § 1396d(a).  There are twenty-seven sub-parts to § 1396d(a), and we find that sub-part (a)(13), in particular, when read with the other sections of the Medicaid Act listed above, mandates that early intervention day treatment be provided when it is prescribed by a physician.  <u>See</u> 42

U.S.C. § 1396d(a)(13) (defining medical assistance reimbursable by Medicaid as "other diagnostic, screening, preventive, and rehabilitative services, including any medical or remedial services . . . recommended by a physician . . . for the maximum reduction of physical and mental disability and restoration of an individual to the best possible functional level"). Therefore, after CHMS clinic staff perform a diagnostic evaluation of an eligible child, if the CHMS physician prescribes early intervention day treatment[8] as a service that would lead to the maximum reduction of medical and physical disabilities and restoration of the child to his or her best possible functional level, the Arkansas State Plan must reimburse the treatment. Because CHMS clinics are the only providers of early intervention day treatment, Arkansas must reimburse those clinics.

Finally, we remind the state that it has a duty under 42 U.S.C. § 1396a(43) to inform Medicaid recipients about the EPSDT services that are available to them and that it must arrange for the corrective treatments prescribed by physicians. The state may not shirk its responsibilities to Medicaid recipients by burying information about available services in a complex bureaucratic scheme.

III. Conclusion

We remand this case to the district court so that it may modify its injunction in accordance with our decision today. Because the district court found in favor of the plaintiffs on the federal statutory claim, it did not consider the plaintiffs' procedural due process claim. We remand for appropriate consideration of that claim as well.

---

[8]A day treatment program operated by medical and childhood development specialists who are familiar with the children's diagnoses and therapies and structure the curriculum to help ameliorate each child's condition.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.